# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**MELVIN B.,**[1]

      **Plaintiff,**

    **v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

**Case No. 1:25-cv-234**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Bowman**

## ORDER

This cause comes before the Court on Magistrate Judge Bowman's August 29, 2025, Report and Recommendation (R&R) (Doc. 16). Pro se Plaintiff Melvin B. filed a Complaint against the Social Security Commissioner for garnishment of Melvin's Social Security benefits to pay his Arizona child support obligation. (Doc. 6). The Commissioner moved to dismiss for lack of subject-matter jurisdiction, or, alternatively, for failure to state a claim. (Doc. 10). Magistrate Judge Bowman recommends that the Court dismiss Melvin's Complaint because the Social Security Commissioner is entitled to sovereign immunity, which operates here as a jurisdictional bar. (Doc. 16, #204–05). But because Melvin is a pro se Plaintiff entitled to liberal construction of his Complaint, Magistrate Judge Bowman construed the Complaint as also raising a claim for insufficient garnishment refunds in August

---

[1] In light of the significant privacy concerns in social security cases, the Court refers to the Plaintiff by his first name. *See* General Order 22-01.

2024, May 2025, and August 2025.[2] (*Id.* at #205–06). To the extent that the Complaint raises that issue, Magistrate Bowman construed the Commissioner's Motion to Dismiss as a Motion for Summary Judgment, which she recommends that the Court grant because Melvin has not exhausted his administrative remedies. (*Id.*). Melvin did not object to the R&R within the 14-day deadline set out in Federal Rule of Civil Procedure 72(b), so the matter is ripe for review. For the reasons stated below, the Court **ADOPTS** the R&R and **DISMISSES** Melvin's Complaint **WITHOUT PREJUDICE**.

## BACKGROUND

Melvin brought this action on April 11, 2025. (Doc. 1). His Complaint, which is written out on a standard complaint form, contains three allegations: (1) that he is a resident of Cincinnati, Ohio, (2) that he complains of a "final decision" from the Social Security Administration (SSA) that warrants judicial review, and (3) that he has exhausted his administrative remedies, giving this Court jurisdiction over his case. (Doc. 6, #26). The Complaint indicates that he is seeking damages from the Social Security Commissioner. Other documents that Melvin submitted flesh out these allegations. Those documents include a handwritten letter from Melvin, (Doc. 8, #37); a letter from an attorney at the Legal Aid Society of Southwest Ohio, (Doc. 8-1, #38); communications from the SSA, (*id.* at #39–42); documents from his personal-injury attorneys, (*id.* at #43–44, 57–60); and bank records, (*id.* at #45–56). Magistrate Judge

---

[2] The Magistrate Judge said that these refunds were issued in March 2025, May 2025, and August 2025. (Doc. 16, #206). But it appears that the notices were in fact issued in August 2024, March 2025, and May 2025. (*See* Doc. 9-10 (August 2024 notice); Doc. 9-12 (March 2025 notice); Doc. 9-13 (May 2025 notice)).

Bowman construed these additional documents as part and parcel of Melvin's pleading. (Doc. 16, #202 (citing *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999))).

Although the narrative here is not all that easy to follow, the gravamen of Melvin's Complaint is that the Commissioner garnished Melvin's Social Security benefits beyond the point when his child support obligation to the State of Arizona had been satisfied. The Legal Aid Society letter explains that Melvin contacted Legal Aid in January 2025 for assistance because the SSA "was incorrectly withholding part of [Melvin's] Social Security benefits to pay child support to Arizona [that Melvin] had already paid." (Doc. 8-1, #38). A Legal Aid attorney contacted the SSA and the Arizona Department of Child Support Services (DCSS) on his behalf. (*Id.*). The attorney confirmed that the DCSS sent the SSA an order to stop withholding child support from Melvin's Social Security benefits in February 2025, and that Melvin started to receive his full benefits check in March 2025.[3] (*Id.*). A settlement statement from Melvin's personal-injury attorneys dated March 4, 2024, indicates that $4,158.44 of a $15,000 personal-injury settlement went to DCSS to pay Melvin's Arizona child support obligation. (*Id.* at #59–60). Melvin says that this $4,158.44 satisfied the obligation. (Doc. 8, #37; Doc. 14, #194). But that satisfaction notwithstanding, the SSA apparently continued to garnish $814 per month until February 2025, when it received the order from Arizona. (Doc. 8, #37; Doc. 14, #195).

---

[3] The Legal Aid Society letter explains that the organization would not assist him in a suit against the SSA because such a suit would have been "outside the scope" of his case with Legal Aid. (Doc. 8-1, #38). Hence this pro se action.

So it's Melvin's position that the Commissioner owes him backpay for the months that his benefits were wrongfully garnished from March 2024 to February 2025. (Doc. 8, #37).

The Commissioner moved to dismiss on June 15, 2025. (Doc. 10). The Motion to Dismiss and associated filings added a few points to the factual record. Arizona first sent the SSA a withholding order in 2012, for an amount of $811 per month. (Doc. 10, #122; Doc. 9-2, #70). The $811 was bumped up to $814 per month in 2023. (Doc. 10, #122; Doc. 9-4, #82). Then, in August 2024, the SSA sent Melvin a notice explaining that he was due a refund in the amount of $314.50. (Doc. 10, #123; Doc. 9-10, #106). That notice contained information concerning Melvin's administrative appeal rights. (Doc. 9-10, #107). The SSA then sent Melvin a notice on February 11, 2025, explaining that it had stopped garnishing his benefits. (Doc. 10, #124; Doc. 9-11, #110). Melvin received another notice in March 2025 explaining that, because DCSS refunded a total of $2,544.07 in a series of payments to the SSA, Melvin would soon receive a refund for that amount. (Doc. 10, #124; Doc. 9-12, #113). This notice, too, contained information concerning Melvin's administrative appeal rights. (Doc. 9-12, #113–14). Yet another notice followed in May 2025. (Doc. 10, #124; Doc. 9-13, #116). This time, the notice explained that DCSS had refunded another couple of payments, totaling $1,628, which Melvin would receive. (Doc. 10, #124; Doc. 9-3, #116). Again, the notice contained information regarding Melvin's administrative appeal rights. (Doc. 9-3, #116–17). Due to an input error, however, the SSA refunded 63 cents too much in the May refund. (Doc. 10, #124; Knichel Decl., Doc. 9, #66).

Arizona has since sent back another $814 to the SSA. (Doc. 10, #124; Doc. 9, #67). So Melvin will receive those funds, too, less the 63 cents. (Doc. 10, #124–25; Doc. 9, #67).

Beyond these additions to the factual record, the Commissioner's Motion to Dismiss makes two legal points. First, the Commissioner argues that Melvin can identify no sovereign-immunity waiver that permits him to sue the Commissioner for complying with income-withholding orders that were valid on their face. (Doc. 10, #128–32). And second, the Commissioner argues that Melvin has not exhausted his administrative remedies, which takes this matter outside of judicial cognizance. (*Id.* at #132–33).

Magistrate Judge Bowman found the Commissioner's first argument persuasive. (Doc. 16, #204). She started by pointing out that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued," (*id.* (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941))), a principle that "extends to agencies of the United States," such as the SSA, (*id.* (quoting *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993))). But Melvin did not allege (or argue in response to the Commissioner's Motion to Dismiss) that "the Commissioner has expressly or even impliedly waived [his] sovereign immunity against" Melvin's claims. (*Id.* at #205 (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996))). Moreover, 42 U.S.C. § 659(f)(1) precludes government liability when a state income-withholding order is issued "pursuant to legal process regular on its face." So the Commissioner could not be held liable so long as he "acted in compliance with Arizona's ongoing income-withholding order." (*Id.* at #204). Thus, because the Commissioner's conduct comported with

5

§ 659(f)(1), and because Melvin did not otherwise identify a sovereign-immunity waiver, Magistrate Judge Bowman held that dismissal was warranted under Fed. R. Civ. P. 12(b)(1) (lack of subject-matter jurisdiction). (*Id.* at #205).

But because Melvin is a pro se Plaintiff who is entitled to a liberal construction of his Complaint, Magistrate Judge Bowman construed the Complaint as also challenging *the amount* that the SSA refunded Melvin in his August 2024, March 2025, and May 2025 refunds. (*Id.* at #206). This possibility was "arguably outside the scope of Rule 12, but may be considered under Rule 56, so long as [Melvin was] provided an adequate opportunity to respond to [the Commissioner's] evidentiary exhibits," which Melvin was. (*Id.*). Each refund notice explained Melvin's "limited administrative appeal rights," which, the Commissioner asserted, Melvin did not pursue. (*Id.*). And because Melvin did not refute that assertion in his response to the Commissioner's motion, Magistrate Judge Bowman concluded that the Commissioner's argument was "persuasive" "[t]o the extent that" it was considered. (*Id.*).

For all these reasons, Magistrate Judge Bowman recommended that Melvin's Complaint be dismissed without prejudice. (*Id.* at #207). The R&R advised Melvin that he had 14 days to serve and file specific written objections, noting that failing to make those objections may forfeit rights on appeal. (*Id.* at #208). *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985); *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). So, because the R&R was issued on August 29, 2025, Melvin had until September 12, 2025, to object. Melvin filed no objections.

6

## LEGAL STANDARD AND ANALYSIS

Under Federal Rule of Civil Procedure 72(b)(3), "district courts review a[] [report and recommendation] de novo after a party files a timely objection." *Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 4348835, at *1 (S.D. Ohio July 5, 2023). But that de novo review requirement extends only to "any portion to which a proper objection was made." *Id.* (citation omitted). In response to such an objection, "the district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* (quoting Fed. R. Civ. P. 72(b)(3)) (cleaned up).

By contrast, if a party makes only a general objection, that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A litigant must identify each issue in the report and recommendation to which he objects with sufficient clarity for the Court to identify it, or else the litigant forfeits the Court's de novo review of the issue. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

That said, Melvin is proceeding pro se. A pro se litigant's pleadings should be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But pro se litigants still must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). And "[t]he liberal treatment of pro se pleadings does not require lenient treatment of substantive law, and the liberal standards that apply at the pleading

7

stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

For any unobjected portions of an R&R, "the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

Here, Melvin has not objected to the R&R. And having reviewed it, the Court concludes that Magistrate Judge Bowman did not commit clear error. The Court agrees that, on Melvin's allegations, § 659(f)(1) precludes the government's liability, and that Melvin has not otherwise identified a sovereign-immunity waiver. The Court also agrees that, to the extent Melvin's Complaint can be construed as challenging the amount of his August 2024, March 2025, and May 2025 refunds, it was proper to apply the summary-judgment standard to the Commissioner's argument that Melvin failed to exhaust his administrative remedies, as assessing that argument required that Magistrate Judge Bowman consider matters outside the pleadings. *See Wysocki v. IBM*, 607 F.3d 1102, 1104 (6th Cir. 2010); Fed. R. Civ. P. 12(d).

Sovereign immunity goes to this Court's subject-matter jurisdiction. *See Gaetano v. United States*, 994 F.3d 501, 506 (6th Cir. 2021). A lack of subject-matter jurisdiction compels dismissal. Because dismissal in this case is on jurisdictional grounds, the Court will dismiss Melvin's complaint without prejudice. Further,

because the Court is dismissing without prejudice, to the extent that Melvin's Complaint raises a claim for the amounts he received in his August 2024, March 2025, and May 2025 refunds, Melvin can pursue administrative relief on that claim.

## CONCLUSION

The Court finds no clear error and **ADOPTS** the R&R in its entirety. Accordingly, the Court **GRANTS** the Commissioner's Motion to Dismiss, (Doc. 10), and **DISMISSES** Melvin's Complaint, (Doc. 6), **WITHOUT PREJUDICE**. The Court further **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this matter on the Court's docket.

**SO ORDERED.**

October 1, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

9